That language has been altered slightly in § 547(b), which refers to a transfer

> (1) to or for the benefit of a creditor; ...
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under Chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) the creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Levine argues that the new wording reflects a change in focus from the creditor class to the individual creditor. Since the focus is on the individual, the diminution of estate doctrine is inappropriate.

While we do not decide this issue, we do note that there is a good argument that the focus in section 547(b) is still on the "amount that will be received by members of the *class* of which

We do not decide, however, whether the diminution of estate doctrine still applies to actions brought by the trustee. Any further limitations on the doctrine will be developed in future cases.

AFFIRMED.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Saulo ALEGRIA, Defendant-Appellant.**

**No. 82–6044**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Dec. 19, 1983.

Nurik, O'Donnell & Lazarus, Marc S. Nurik, Fort Lauderdale, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Michael Burnbaum, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

GODBOLD, Chief Judge:

Alegria appeals from his conviction of possession with intent to distribute cocaine under 21 U.S.C. Sec. 841(a)(1) (1976). On appeal he contends that the district court erred in finding, first, that his statements to agents were voluntary and, second, that he consented to the search of his automobile.

### I. Facts

Following Alegria's indictment the magistrate conducted a hearing on a motion to suppress statements and physical evidence. At the hearing DEA agent Ledwith testified that he received a call from a Colombian Air Force warehouse at Fort Lauderdale [Florida] International Airport and that he and agent Garland went to the warehouse. When they arrived, Colonel Ferrero, an officer in the Colombian Air Force, gave them a package containing cocaine and introduced them to Alegria, a member of the Colombian Air Force detachment at Fort Lauderdale. Alegria had been seen removing the package from an air force plane. Garland testified that prior to any questioning he read Alegria his rights in Spanish and gave him a card to read that also contained his rights in Spanish. Garland testified that Alegria stated he understood his rights and that he had no objection to talking with the agents.

The agents then questioned Alegria in Spanish about the cocaine, and Alegria stated that it had been placed on board the plane in Colombia by another member of

the Colombian Air Force and that Alegria was to pick up the cocaine and wait to be contacted by an unknown individual. Alegria also stated that no more cocaine was on board the plane. He was then placed under arrest and again reminded of his rights.

Agent Ledwith and two U.S. customs agents searched the plane and found another package of cocaine in the cockpit area where the original package had been found. After finding this second package, Ledwith called the U.S. attorney and informed him of the situation. The agents then questioned Alegria about this package of cocaine, and Alegria again stated that there had been only one package on the plane.

Agent Garland testified that Alegria consented when asked if his car could be searched and that Alegria gave the agents the ignition and door key but stated that the trunk key was lost or at home. Garland testified that he informed Alegria of his right not to consent to the car search prior to the search and that Alegria also consented to a search of the trunk, though he did not have the key.

Agent Ledwith testified that during the car search he observed two holes in the shelf between the back seat and the rear window, which were ostensibly designed for stereo speakers. The holes appeared too large for speakers, and the agents, looking through the holes, saw two more packages in the trunk. The agents again called the U.S. attorney and afterwards forced open the trunk. In a field test the two packages from the trunk proved positive for cocaine.

Various officers of the Colombian Air Force were in the room while Garland questioned Alegria. Garland stated that these officers did not question Alegria but that Colonel Ferrero aided in translating Alegria's statements. Colonel Ferrero testified that he was present during the original questioning of Alegria but absent during the questioning concerning the car. Ferrero also testified that he questioned Alegria about the cocaine prior to the agents' arrival and suggested that he cooperate with the agents for his own benefit but that Ferrero did not order Alegria to cooperate.

Alegria testified that he felt he was under orders to answer the agents' questions. He also testified that nothing was read to him but that he was handed a card with his rights on it. He testified that he did not understand his rights at the time. He maintains that he was not asked any questions concerning the offense and that all of the information was given to the agents by Colonel Ferrero. He also testified that he was never asked whether his car could be searched or told that he could refuse to allow the search. Instead, he maintains, the agents told him to give them his car keys. He stated that he was informed only of his right to have an attorney.

The magistrate made oral findings of fact and conclusions of law and recommended that the motion to suppress be denied. He found that Alegria voluntarily answered the questions and consented to the search of his car. Alegria filed timely objections to the magistrate's recommendation and report and requested a hearing on the magistrate's decision. The district court held a hearing, adopted the magistrate's recommendation and report and denied the motion to suppress. At trial Alegria again objected to the admission of the statements and the cocaine. He was found guilty.

## II. Voluntariness of the statements

■ The district court did not err in finding Alegria's statements to the DEA agents voluntary. Alegria contends that the interrogation by his commanding officer, Colonel Ferrero, prior to the arrival of the agents, Ferrero's suggestion that Alegria cooperate with the agents, and the continued presence of his military superiors during the agents' interrogation prevented him from exercising his constitutional rights. He does not say that he was not given his *Miranda* warnings or that Colonel Ferrero was acting as a law enforcement agent of the United States when questioning him. Alegria asserts only that the DEA agents should have explained that his rights existed regardless of Colombian military regulations or the wishes of his superiors.

Alegria's statement is voluntary if, under all the surrounding circumstances, it was a product of Alegria's "free and rational" choice. *See U.S. v. Vera,* 701 F.2d 1349, 1364 (11th Cir.1983). A trial court's determination of voluntariness must be upheld unless clearly erroneous. *See id.*

The district court found that Alegria was informed of his rights by the agents prior to his giving any statement, that he received a card to read containing his rights in Spanish, and that he understood his rights, all before voluntarily answering agent Garland's questions. That Alegria was questioned before the agents' arrival by his commanding officer, who suggested he cooperate, has no bearing on the later voluntariness of his statements to the DEA agents after he was informed and repeatedly reminded of his rights. The *Miranda* warnings are aimed at preventing coercion by federal or state government agents, and Alegria makes no claim that the DEA agents coerced him into confessing. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Once informed of his rights, Alegria had the burden of indicating in some manner that he wished to remain silent. *See U.S. v. Bosby,* 675 F.2d 1174, 1182 n. 13 (11th Cir.1982). He did not indicate he wished to remain silent even though he was repeatedly reminded of his rights and his rights were explained to him prior to any discussion with the agents. Furthermore, Alegria did not request explanation of his rights but, rather, stated that he understood them. The district court's finding that the statements were voluntary is not clearly erroneous.

### III. Voluntariness of consent to search the automobile

Alegria argues that the factors discussed in part I also negate any consent that he gave the agents to search his car. Additionally, he claims that the three packages of cocaine were the fruit of an illegal questioning and should have been suppressed on that ground as well. Both claims are without merit.

The district court found that Alegria voluntarily consented to the search of his car. The voluntariness of Alegria's consent must be determined by the totality of the circumstances. *See U.S. v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878–1879, 64 L.Ed.2d 497 (1980); *U.S. v. Phillips,* 664 F.2d 971, 1023 (5th Cir.1981) (Unit B), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). The district court's determination of the credibility of the witnesses and the voluntariness of consent will not be reversed unless clearly erroneous. *See Phillips,* 664 F.2d at 1023.

The agents testified that Alegria was informed in Spanish of his *Miranda* rights and of his right to refuse to consent to the search of his car. Although Alegria gave the agents only the ignition and door keys, both Alegria and the agents testified that the trunk key was at Alegria's home or lost. The agents also specifically asked Alegria, they testified, for permission to enter the trunk, which he granted, prior to their forcing it open. Alegria had a college degree in business and presumably understood the agents' request. *See Phillips,* 664 F.2d at 1023–24. Although Alegria's commanding officers were present at the time of the questioning, they took no part in the questioning. No evidence exists that the Colombian officers forced Alegria to consent to the search of the car or that the agents coerced Alegria to obtain his consent. *See id.* The district court's finding that Alegria voluntarily consented to the automobile search is not clearly erroneous.

Both the statements and the cocaine were properly admitted into evidence.

AFFIRMED.