**UNITED STATES of America, Appellee,**

v.

**Robert T. KIMBALL, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**David M. EMERY, Defendant, Appellant.**

Nos. 83–1651, 83–1652.

United States Court of Appeals, First Circuit.

Argued March 5, 1984.

Decided Aug. 15, 1984.

Rehearing Denied Sept. 26, 1984.

Robert Levine, Rockland, Me., with whom Strout, Payson, Pellicani & Cloutier, Rockland, Me., was on brief, for David M. Emery.

Paul L. Gibbons, Camden, Me., with whom Calderwood, Ingraham & Gibbons, Camden, Me., was on brief, for Robert T. Kimball.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., and William H. Browder, Jr., Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and GIERBOLINI,* District Judge.

GIERBOLINI, District Judge.

Appellants Robert T. Kimball and David M. Emery were convicted in the United States District Court for the District of Maine for violation of Title 26, United States Code, §§ 5861(d) and 5871.[1] After a bench trial, the judge found defendants guilty as charged in Count I of the indictment and sentenced them accordingly.

Appellants raise three points in support of their contention that these convictions are improper and should be reversed. First, they claim that the district court applied an incorrect standard in deciding factual issues of consent. Second, it is argued that Kimball's consent to the search of his cabin was not voluntary. And third, Kimball alleges that the district court impermissibly considered the fact that he fired shots at the Coast Guard vessel when imposing sentence. Finding that the district court correctly disposed of all these issues, we affirm.

I

The facts are as follows. On February 20, 1982 at approximately 9:15 p.m., officers of the Maine Bureau of Marine Resources received a report that shots were being fired in Penobscot Bay off the coast of Camden. Sgt. Perley Sprague dispatched marine patrol officers John Fetterman and Jeffrey Gallagher to the United States Coast Guard station at Rockland where they boarded a U.S. Coast Guard patrol boat which took them to a position 4,000 yards off Lasell Island. At that point, Fetterman heard sporadic automatic weapon fire coming from the island. Each time the lights of the patrol boat were activated Fetterman observed bursts of gunfire coming directly at the boat from the direction of Kimball's cabin in the island. After several abortive attempts to come near the island, the officers returned to Rockland where they assembled with various other law enforcement officers and formulated a general plan for approaching the cabin. No arrest or search warrants were obtained.

At about approximately 7:30 a.m. on February 21, 1982, the armed officers landed on the island, surrounded the cabin and used a bullhorn to call Kimball out of the cabin. After the third request, Kimball emerged from the cabin dressed in pants, a long-sleeved shirt and wearing only heavy boot socks on his feet. Sgt. Sprague with his sidearm still in its holster, approached Kimball while the other officers remained at their positions, firearms ready, but directed away from Kimball. Upon approaching Kimball, Sprague observed numerous spent shells on the cabin steps. Kimball was immediately placed under ar-

* Of the District of Puerto Rico, sitting by designation.

1. Kimball was also charged with various other firearms violations which are not pertinent to the present appeal. He was found guilty under Count II, but the conviction was vacated by the court. All other counts were voluntarily dismissed by the government.

rest, handcuffed, and advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Sgt. Sprague explained that they were investigating a report of gunfire in the area the previous evening and asked Kimball if he knew anything about it.

Then Sgt. Sprague asked who else was inside the cabin and Kimball stated that his girlfriend Joni Dyer was inside. Kimball was instructed to tell Dyer to come out. When Dyer appeared at the door, Sgt. Sprague suggested that Kimball might want to ask her to bring out his boots since it was relatively cold and there was light snow. At Kimball's request, Dyer brought the boots which Kimball proceeded to put on. Dyer was allowed to go back in the cabin. Sgt. Sprague then requested permission to go inside the cabin and was refused. The officer stated that he accepted Kimball's decision and that it was his absolute right to refuse entry without a warrant. After accepting Kimball's decision to withhold consent, Sgt. Sprague made clear that a team of officers would remain to secure the cabin while others returned to Rockland in search of a warrant.[2]

Kimball then announced that he needed to respond to a call of nature and when he returned to the cabin steps, he stated, "Ok, Perley, you can come in." Kimball entered the cabin first followed by Sgt. Sprague and Ketterman. Upon entering, Sgt. Sprague saw defendant Emery, who was also known to him and immediately proceeded to advise Emery and Dyer of their *Miranda* rights. After Kimball told Emery that the officers were looking for an automatic weapon, Sgt. Sprague stated that it would be much easier if they showed him where it was. Kimball nodded affirmatively to Emery and Emery reached behind the sofa in the main room of the cabin and retrieved a Colt M–16 machine gun

from under a blanket. The machine gun was surrendered to Sgt. Sprague.

Kimball's handcuffs were removed and Emery offered Sprague a cup of coffee which he accepted. During some casual conversation, Emery stated that he also "ripped off a few" rounds but that Dyer had not fired the weapon. Sgt. Sprague then advised Kimball and Emery that they were under arrest, but that Dyer would not be arrested.

Prior to trial, appellants filed a joint motion to suppress certain tangible evidence and statements which was denied upon the court's findings that Kimball had consented to the search and that the statements made by both defendants were voluntary and thus admissible. These findings are the subject of the present appeals.

## II

Appellants argue that the court erred when in analyzing the evidence, it concluded: "It is *more plausible* that Kimball's permission to enter the cabin was prompted (1) by his realistic resignation to the inevitability of the search, once Sprague expressed his firm determination to return to Rockland for a search warrant; (2) by Kimball's concern for his own comfort; or (3) by his appraisal of the prospect that cooperation with the officers might result in greater leniency toward himself and his companions."

Specifically, they contend that to find from all the evidence that it was more plausible that Kimball's permission was governed by the aforementioned factors constitutes error since it falls short of the government's burden of establishing consent by clear and convincing evidence.

This argument is without merit. An analysis of the district court's opinion clearly reflects that the use of the phrase "more plausible" was not in the context of applying any standard. The district court did

---

**2.** As to the legitimacy of securing the premises while a search warrant is obtained, where there is probable cause to believe that evidence is located in a house and that the occupants will destroy or remove it pending the issuance of a

warrant, *see U.S. v. DiGregorio*, 605 F.2d 1184, 1188 (1st Cir.) *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *U.S. v. Edwards*, 602 F.2d 458 (1st Cir.1979); and *U.S. v. Picariello*, 568 F.2d 222 (1st Cir.1978).

apply the appropriate standard in determining whether valid consent was given. Citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968), the court properly placed the burden on the government of proving that the consent was freely and voluntarily given.

Appellant Kimball also contends that the court erred in concluding that his consent to the search of the cabin was voluntary.

▪ At the outset we note that a trial court's finding of voluntary consent and its determination of the credibility of the witnesses are subject to the clearly erroneous standard of review. *United States v. Alegria*, 721 F.2d 758 (11th Cir.1983); *United States v. Phillips*, 664 F.2d 971, 1023 (5th Cir.1981) (Unit B), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). The question whether the consent to a search was in fact voluntary or was the product of duress or coercion is a question of fact to be determined by the trier of fact from the totality of the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980); *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

In its opinion, the district court considered the following factors: The fact that Kimball was handcuffed and in custody when he gave consent, his initial refusal of permission to enter the cabin, the physical and psychological atmosphere,[3] that Kimball was informed of his constitutional rights and his right to refuse a warrantless entry, Kimball's longstanding relationship with two of the arresting officers, Kimball's perception that a search would inevitably occur even if he withheld permission, and his express grant of consent to enter.

▪ Moreover, the court was faced with contradictions as to the version of events as testified to by the defendants and the officers. The trial court explicitly credited the officers' testimony since the same were more credible and internally consistent. The issue of credibility is appropriately addressed to the trial court as finder of fact. *United States v. DiGregorio*, 605 F.2d 1184, 1188 (1st Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979). Accordingly, we agree that the following circumstances clearly warrant a conclusion that the consent given by Kimball was voluntary: the officers waited until daytime before approaching the cabin; the officers gave Kimball time to dress and meet them outside the cabin; the arresting officers directed their weapons away from Kimball when he appeared at the stairs of the cabin; the officers were considerate of Kimball's well-being and physical comfort; Kimball was given the *Miranda* warnings as soon as he emerged from the cabin; he was advised of his right to refuse entry without a warrant; Kimball himself led the officers into the cabin without any prompting; Kimball was well aware of when it was to his advantage to cooperate and when to resist; Kimball was no newcomer to the law since he had been arrested on four previous occasions; Kimball had been acquainted with two of the arresting officers for six to eight years. Therefore, the determination of credibility by the district court was not clearly erroneous and should stand.

▪ Finally, Kimball argues that the district court erred in considering for the imposition of sentence the fact that he used the unregistered machine gun to fire at a Coast Guard vessel which he knew to be occupied by law enforcement agents; a crime for which he was not charged. There is no merit in this argument. 18 U.S.C. § 3577 provides that:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted

---

**3.** It appears that Kimball was outside the cabin for approximately seventeen minutes. Although appellant claims that he was cold and uncomfortable during the entire time he remained outside, he never told the officers that he was cold nor did he ask for warm clothing. Furthermore, Kimball testified at the suppression hearing that he did not notice the temperature until shortly before entering the cabin.

of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

The broad scope of § 3577 clearly authorizes a trial judge to rely on a wide range of information, including for example, alleged criminal activity for which defendant has not been prosecuted. *Smith v. U.S.*, 551 F.2d 1193, 1196 (10th Cir.1977), *cert. denied*, 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90; *United States v. Plisek*, 657 F.2d 920, 926 (7th Cir.1981).

In *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), the Court, interpreting § 3577, held that a federal district judge may, prior to sentencing, "... conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."

From the record, it appears that Kimball had sufficient opportunity to demonstrate that he did not know he was firing upon Coast Guard officers. We conclude that even though Kimball was not convicted for this incident, such information was highly relevant to the sentencing decision. As such it was properly considered by the trial judge under 18 U.S.C. § 3577, particularly, when at the sentencing hearing Kimball was given the opportunity to contest the facts contained in the presentence report which addressed the issue that he knew he was firing upon a manned Coast Guard vessel and no objections were raised. *See United States v. Hill*, 688 F.2d 18, 19, 20–21 (6th Cir.1982).

Moreover, "[a] sentence that is within the statutory limits and is not based on misinformation of a constitutional magnitude is within the discretion of the sentencing judge." *United States v. Tracey*, 675 F.2d 433, 441 (1st Cir.1982); *United States v. Miller*, 589 F.2d 1117, 1138 (1st Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979). Generally, a sentence imposed by a federal judge, if within statutory limits, is not subject to review. *United States v. Tucker*, 404 U.S.

443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

 Finally, a series of evidentiary hearings established that Kimball lied under oath about who brought the machine gun to Lasell Island. A defendant's mendacity while testifying on his own behalf is undoubtedly relevant to sentencing. *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978).

*Affirmed.*