UNITED STATES of America, Appellee,

v.

Daniel H. GEORGE, Jr.,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

William PARIS, Defendant, Appellant.

Nos. 84–1195, 84–1196.

United States Court of Appeals,
First Circuit.

Argued Oct. 3, 1984.

Decided Jan. 16, 1985.

Rikki J. Klieman, Boston, Mass., with whom Friedman & Atherton, Boston, Mass., was on brief for appellant Daniel H. George, Jr.

David M. McGlaughlin, Philadelphia, Pa., with whom Alan Ellis and Ellis, Fogelnest & Newman, Philadelphia, Pa., were on brief for appellant William Paris.

Louis M. Fischer, Atty., Dept. of Justice, Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before COFFIN and BOWNES, Circuit Judges, and WEIGEL,* Senior District Judge.

COFFIN, Circuit Judge.

Appellants-defendants William Paris and Daniel George appeal from jury convictions for conspiring to possess with intent to distribute and manufacture amphetamine in violation of 21 U.S.C. § 846.[1] They raise numerous claims challenging the legality of their convictions. We reject all but one of these claims, letting the jury verdict stand. We remand to the district court for resentencing.

The facts as presented at trial showed that between October 1981 and April 1983, appellants and co-defendant Leslie Schmidt conspired to manufacture and distribute amphetamine.[2] At the time of the conspiracy, appellant George was working as a cosmetics chemist for Catherine Hinds in Massachusetts. Through the lab George was able to purchase the precursor chemicals. He then furnished chemical mixtures to Schmidt and instructed him in methods of manufacturing the illegal substances. George referred to the chemical substances they were trying to produce by number; amphetamine was No. 10 and MDA was No. 8. Certain of the substances were intended to mimic the effect of controlled

substances without in fact being controlled. Other substances, including No. 10, were known by the co-conspirators to be controlled substances whose distribution on the street was illegal. Schmidt, who performed the chemical procedures in Pennsylvania, was assisted after January 1983 by appellant Paris. Paris was initially introduced to Schmidt by George and on at least one occasion the three met in George's house in Massachusetts to discuss methods of synthesizing amphetamine and methamphetamine. Upon completion, the finished products were sold in Pennsylvania and the monies received from the scheme were allegedly earmarked as capital for the development and production of their own line of cosmetics, hair care products and a new sugar substitute.

As a result of problems George was having in acquiring chemicals at the lab, Schmidt arranged with Sharon Hertzke to provide him with the needed chemicals. At that time, Hertzke was acting in an undercover capacity for the Pennsylvania State Police. In exchange for her assistance, Schmidt gave Hertzke one-quarter ounce of amphetamine. He also gave her one-eighth of an ounce to sell. Hertzke later met with each of the co-conspirators. Schmidt and Paris were arrested five days after their joint meeting with Hertzke. A search of Paris' home that day revealed written chemical formulas, orders and invoices for chemicals, three false identifications bearing Paris' photograph, a computer, computer printouts containing sources for chemicals along with lists of chemicals and handwritten methods of synthesis for both amphetamine and methamphetamine. Several small bags of powder were found, only one of which contained controlled substances. A substance consisting of 1.4 grams of powder, 37.8% which was amphetamine and 9.6% methamphetamine, later designated

---

* Of the Northern District of California, sitting by designation.

1. Appellants were acquitted on two other counts of conspiring to possess with intent to distribute and to manufacture 3, 4 methylenedioxyamphetamine (MDA).

2. Schmidt pleaded guilty prior to trial to two counts of the instant indictment as well as to two drug offenses in an indictment in the Eastern District of Pennsylvania. He was sentenced in Pennsylvania on all counts to ten years imprisonment.

as Government Exhibit 14, was found in a jacket pocket.

We address each of appellants' claims separately below.

### 1. Sufficiency of the Evidence to Sustain the Convictions of George and Paris

■ George and Paris contend that their motion for judgment of acquittal and/or new trial was improperly denied because there was insufficient evidence to sustain their convictions. Neither appellant contests the fact that George, Schmidt and Paris entered into an agreement to manufacture "substances". They argue only that the government failed to prove that each had the specific intent to commit the substantive crime of manufacturing and distributing amphetamine.

Appellant George claims that because Schmidt lacked the intent to manufacture amphetamine, the agreement between Schmidt and George to manufacture and sell other controlled substances of similar effect did not relate to the illegal act charged in the indictment, *United States v. Flaherty*, 668 F.2d 566, 580 (1st Cir.1981), and the government failed to prove beyond a reasonable doubt by either direct or circumstantial evidence the requisite intent to agree and to commit the substantive offense charged. *Id.; United States v. DeLutis*, 722 F.2d 902, 905 (1st Cir.1983).

George relied on portions of the transcript where Schmidt stated that George wanted to produce substances that mimicked the effects of controlled substances but were not themselves illegal, and that Schmidt thought he was producing a controlled substance that was like amphetamine but was not amphetamine. Viewed in the light most favorable to the government, *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir.1981), there was adequate testimony from which the jury could have determined that the parties agreed to produce George's "No. 10", that "No. 10" was a controlled substance and that Schmidt believed it was amphetamine. For example, Schmidt several times testified that "No. 10" was amphetamine, that George

said it was a Schedule II controlled substance, and that it had side effects associated with amphetamine. That the parties referred to the amphetamine by code number does not detract from the sufficiency of the evidence. *See, e.g., United States v. Moser*, 509 F.2d 1089, 1092 (7th Cir.1975) (defendants charged with selling LSD but claimed they were distributing psilocybin or mescaline); *United States v. Ramos*, 666 F.2d 469, 477 (11th Cir.1982) (jury may legitimately infer that one who possesses drugs knows what the drug is).

George shared with Schmidt the requisite intent to manufacture amphetamine. The record is replete with evidence showing that George was aware of the illegal nature of the drug that Schmidt was synthesizing and that he agreed to participate in the scheme to manufacture amphetamine. George was mistaken in his belief that he was insulated from criminal responsibility because he never completed the drug synthesis, avoided contact with the finished product and sold the precursor chemicals to Schmidt instead of profiting from the sale of the finished product.

Paris also claims to have entered into a relationship with George and Schmidt without the intent to do an illegal act. Paris apparently viewed his agreement as close to, but not crossing, the edge of criminality. The record does not support Paris' contention. Paris actively entered into an agreement with Schmidt and George, and he specifically sought their advice on a method of manufacturing amphetamine. Accordingly, there was ample evidence before the jury to determine that Paris, George and Schmidt each had the requisite intent to manufacture amphetamine and that they entered an agreement to produce this drug. The court below properly denied appellants' motions for acquittal and/or new trial.

### 2. Prejudicial Variance and Improper Spillover

■ A variance occurs when the facts proved at trial are different from those alleged in the indictment. *United States v.*

*Flaherty*, 668 F.2d at 582. However, variance constitutes grounds for reversing a conviction only when it affects the defendant's "substantial rights", that is, when the variance deprives a defendant of sufficiently specific information to prepare a defense and to be protected against surprise at trial, and prevents him from asserting his constitutional protection against double jeopardy. *Id.*

Appellant George argues that a prejudicial variance occurred below. The government allegedly offered evidence of six amphetamine conspiracies (based on different methods of manufacturing amphetamine), only some of which were the subject of the indictment. The government argues, and we agree, that the evidence referred to by George provides substantial support for nothing more than what the indictment alleges, namely that George, Schmidt and Paris conspired to manufacture amphetamine. That more than one method of synthesis may have been involved or discussed by some members of the conspiracy does not amount to variance.

■ Moreover, even had the testimony varied from the allegations of the indictment, George's request for a retrial on this issue must be denied. George failed to show that the variance affected his "substantial rights". The jury apparently was not confused by the evidence because it was able to distinguish between the charged conspiracies, as shown by the acquittal of both George and Paris on the two counts of the indictment charging conspiracy to possess with intent to distribute and manufacture MDA. Nor is George's future double jeopardy claim undermined by the evidence. George was convicted for conspiracy to manufacture amphetamine, and as to this drug, these actors, this time

period, and this setting, George cannot be required to stand trial again. If there should be any doubt as to the evidence relied upon at this trial George can interpose the record of the proceeding as a double jeopardy defense. *See United States v. Kramer*, 711 F.2d 789, 796 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983).[3]

George further argues that the introduction of evidence of multiple conspiracies in which he was not involved impermissibly provided the basis for his conviction. George faults the court for failing to give instructions limiting the evidence to one or another of the defendants and for failing to instruct the jury on multiple conspiracies.

■ Where it is shown to be prejudicial, the "spillover" of evidence is prohibited under the doctrine of variance. *United States v. Flaherty*, 668 F.2d at 582. There was, however, no impermissible spillover in this case. We reiterate that the government did not link George to conspiracies beyond that charged in the indictment, and the government presented sufficient evidence to convict George of conspiracy to manufacture amphetamine. His conviction, therefore, did not depend on the additional evidence of varying methods of synthesizing amphetamine or MDA. Moreover, there was no prejudice to George as a result of the introduction of this evidence. To the extent that evidence introduced was unrelated to George, the trial court adequately instructed the jury to limit the evidence at the time it was offered. *United States v. Moosey*, 735 F.2d 633, 635 (1st Cir.1984). To the extent that the jury expressed confusion about the evidence, the jury's ability to distinguish between MDA and amphetamine when it acquitted appel-

**3.** Along the same lines, George claims that the district court abused its discretion in declining to order a bill of particulars indicating the method of synthesizing the amphetamine charged in the conspiracy. George alleges that the government's failure to produce a bill has resulted in prejudice to him and inadequately protects him against a second prosecution for the same offense because neither the indictment, the grand jury minutes, nor the jury verdict provide sufficient information to determine *which* conspiracy to manufacture amphetamines is the basis for his present conviction. For the reasons discussed above—that there was only one conspiracy proven, namely to manufacture amphetamines, and George was convicted of that conspiracy by a jury that distinguished between conspiracies—we find this claim to be without merit.

lants on the counts involving the former supports our conclusion that there was no prejudicial spillover in this case.

### 3. Double Jeopardy Claims

■ Appellant George next claims that under *Braverman v. United States*, 317 U.S. 49, 52, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942), he may not be prosecuted for more than one conspiracy because the evidence introduced at trial proved that the multiple charged conspiracies are actually the same agreement. *See Kerrigan v. United States*, 644 F.2d 47, 49 (1st Cir.1981). Appellant bases his conclusion on the fact that the evidence used to prove each count of the four-count indictment was the same;[4] it involved the same time period, the same location, the same participants and the same statutory provision. *United States v. Booth*, 673 F.2d 27, 29 (1st Cir.1982).

■ On this issue there apparently is no disagreement. The government conceded that in the circumstances of this case, the four charged conspiracies should have been merged into a single conspiracy having multiple counts. The parties disagree only as to the scope of the remedy required to rectify the state's incorrect indictment. Where there is only one conspiracy, *Braverman* requires sentencing on one count only and dismissal of the remainder to protect double jeopardy rights. 317 U.S. at 54, 63 S.Ct. at 102. *Braverman* does not require the granting of a new trial. *Id.* George recognizes as much but suggests that the acquittal of appellants on two counts indicates an internal inconsistency in the jury verdicts necessitating a retrial in this instance. Where there is only one conspiracy, George argues, the lack of unity of the jury verdicts demonstrates confusion on the part of the jury as to the very existence of an agreement. We disagree. Appellant fails to note that the district court instructed the jury that it should

review the case as essentially charging one agreement to commit four illegal acts. With that instruction in mind, the verdict finding appellants George and Paris not guilty on the two counts relating to MDA is entirely consistent with their finding of guilt on the amphetamine conspiracy.

Although a new trial is unwarranted, under *Braverman* appellants' concurrent sentences on the two counts are improper. At a minimum, George and Paris are entitled to have their sentences revised to a conviction on one count. Accordingly, although the jury verdict stands, we vacate the judgment and remand these cases to the district court for resentencing in conformity with this opinion. *Braverman v. United States*, 317 U.S. at 55, 63 S.Ct. at 102; *United States v. Winship*, 724 F.2d 1116, 1127 (5th Cir.1984).

Paris argues that his conviction in Massachusetts for conspiracy was barred by the double jeopardy clause because this conviction relied on the same evidence that was used to prove a prior offense in Pennsylvania. We find Paris' argument without merit. Paris was indicted in the Eastern District of Pennsylvania under 21 U.S.C. § 846 on several counts, including attempt to distribute amphetamine on April 13, 1983. He was convicted on that count as a result of evidence of his sale to Hertzke of what he represented to be amphetamine.

■ The test for a violation of the double jeopardy clause is not merely whether a second prosecution relies on the same evidence as an earlier prosecution, but whether the two offenses charged are insufficiently distinguishable to allow the defendant to stand trial again. The defendant will not be subjected to double jeopardy where the statutory provisions of each of the indicted charges "require[ ] proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S.

**4.** George and Paris were charged under 21 U.S.C. § 846 with:

1. conspiracy to possess with intent to distribute 3, 4 methylenedioxyamphetamine (MDA);

2. conspiracy to possess with intent to distribute amphetamine;
3. conspiracy to manufacture MDA;
4. conspiracy to manufacture amphetamine.

299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

 Conspiracy to commit an unlawful act and attempt to commit an unlawful act are distinct offenses. Conspiracy requires proof of an agreement to commit an unlawful act. *Iannelli v. United States*, 420 U.S. 770, 777 & n. 10, 95 S.Ct. 1284, 1289 & n. 10, 43 L.Ed.2d 616 (1975). Paris' conviction for attempt to distribute amphetamine required no such proof of an agreement. On the other hand, the attempt charge required proof of an overt act, *United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir.1983), which is not a necessary element under a Section 846 conspiracy charge, *United States v. DeJesus*, 520 F.2d 298, 301 (1st Cir.1975). Accordingly, Paris' conspiracy conviction did not violate the double jeopardy clause.

### 4. Remaining Claims

The remaining six sets of claims we dispose of briefly. This does not mean that they were not legitimately raised or were insubstantial, but only that at this juncture, after consideration by the district court and by us after briefing and oral argument, they have lost their firepower. Our rejection of these claims stems from a straightforward application of existing law, our finding that the court did not abuse its discretion, or that appellants suffered no prejudice. Our treatment here will accordingly be brief.

Despite an objection by both George and Paris to the admission of Government Exhibit 14, a mixture of amphetamine and methamphetamine, the admission was clearly relevant as indicating Paris' intent or knowledge. Fed.R.Evid. 402. Although the court did not explicitly articulate that it weighed the probative value against the possibility of unfair prejudice, it did invite defense counsel to cross-examine as to probativeness. This indicates to us that the court was concerned and made the necessary inquiry. There was no abuse of discretion. *United States v. Sorrentino*, 726 F.2d 876, 886 (1st Cir.1984); *United States v. Gonsalves*, 668 F.2d 73, 75 (1st Cir.1982).

Two evidentiary objections by Paris are also unavailing. Evidence of other criminal activity was clearly relevant to the issue of his claimed innocent intent, Fed.R.Evid. 404(b); and the admission of testimony from Schmidt, who had admitted a prior perjury—raised as an issue only on appeal—did not begin to rise to the level of plain error, Fed.R.Evid. 601.

 The government's delayed production of exculpatory evidence contained in *Brady*/Jencks Act materials did not deny George his right to a fair trial. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). George utterly failed to demonstrate how the production of the transcripts of the electronically recorded Schmidt/Hertzke conversations after the two witnesses had finished testifying impaired his defense or prejudiced him at trial. George alleges no particular detriment suffered as a result of delayed disclosure nor any intent on the part of the government to withhold the transcripts. Rather the record reflects that George declined the opportunity to recall either witness after production of the tapes. Accordingly, we find that George was not denied the effective use of exculpatory information due to delayed production. *United States v. Peters*, 732 F.2d 1004, 1009 (1st Cir.1984). Similarly, because it is clear that George made full and effective use of Schmidt's pre-sentence report, the government's one day delay in the production of that report did not result in a *Brady* violation. *Id.*

 Evidence of George's prior conviction for the manufacture and distribution of amphetamine and methamphetamine was admissible for impeachment purposes under Fed.R.Evid. 609(a)(1). The court has broad discretion to admit evidence of prior crimes, where, as here, the court determines that the probative value of the evidence outweighs its prejudicial effect. Fed.R.Evid. 609(a)(1); *United States v. Kiendra*, 663 F.2d 349, 353 (1st Cir.1981).

■ Appellants' contention that the district court committed reversible error in its instruction to the jury on the use of circumstantial evidence is also without merit. They claim that by giving the particular example of proof by circumstantial evidence that it did, the court abrogated its responsibility to remain impartial at trial. Although the court's use of a murder conviction was a particularly graphic example of circumstantial evidence, we do not find that the charge, when viewed in its entirety, *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975); *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973), affected the neutrality of the proceedings. Particularly because the illustration relied upon facts so distinct from the instant case, and because the court cautioned the jury as to the limited use of the example, we conclude that no bias was conveyed to the jury.

■ We reject for similar reasons George's claim that the trial court constructively amended the indictment as a result of an improper definition of the crime of conspiracy. *United States v. Gonzalez,* 661 F.2d 488, 492 (5th Cir.1981). Although briefly in the instruction on conspiracy the court linked the crimes of conspiracy and attempt, upon objection the court correctly clarified the definition of conspiracy. George's claim that he was tried on a charge that was different from the one in the indictment, therefore, must fail. *United States v. Gibson,* 726 F.2d 869, 873 (1st Cir.1984); *United States v. Kelly,* 722 F.2d 873, 876 (1st Cir.1983).

■ Brief persual by two members of the jury of the transcript of Catherine Hinds' grand jury testimony, a matter not in evidence, did not necessitate the declaration of a mistrial. When, during deliberations, the improper presence of the exhibit in the jury room was discovered, the court individually interviewed the two jurors who had seen the transcript. The court determined that the impartiality of the deliberations had not been affected by their exposure to the unadmitted evidence and therefore no prejudice resulted to the appellants. There was no abuse of discretion here because the court had ample evidence to support its determination.

■ With regard to George's claim that the court's denial of the jury's request to reread several segments of testimony was an abuse of discretion, we note simply that the decision to reread testimony rests within the sound discretion of the trial court. *United States v. Hyson,* 721 F.2d 856, 865 (1st Cir.1983); *United States v. Almonte,* 594 F.2d 261, 265 (1st Cir.1979). The court's determination that the requested testimony was too "scattered" and voluminous to be reread provides sufficient justification for its decision. The court's decision to summarize for the jury the contents of only the powdered samples of substances admitted into evidence and not of all the samples seized from Paris' home was, likewise, reasonable in the situation and was therefore not an abuse of discretion.

*The verdict of the jury stands. We vacate the judgment below as to each of the appellants and remand these cases to the district court with directions to enter a new judgment and sentence in accordance with this opinion.*