**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andes–Mar Pereira BARBOSA,
Defendant–Appellant.**

No. 89–50274.

United States Court of Appeals,
Ninth Circuit.

Argued and Submission Deferred
April 9, 1990.

Submitted May 8, 1990.

Decided June 28, 1990.

Kevin R. Brehm, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Steven D. Clymer, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN, Chief Judge, TANG and BOOCHEVER, Circuit Judges.

GOODWIN, Chief Judge:

Defendant Andes–Mar Pereira Barbosa appeals his conviction, following a jury trial, for importation of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960, and possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He also challenges the district court's application of Sentencing Guideline § 3C1.1 to increase his offense level by two points. We affirm.

After arriving in the Los Angeles International Airport on a flight from Rio de Janeiro, Barbosa was stopped by Customs Inspector Charles Carlson and asked to present his luggage for inspection. As a result of the inspection, Barbosa was discovered to be carrying two chessboards, in which an aggregate of six and one-half pounds of cocaine was concealed.

Barbosa denied any knowledge of the drugs, telling Customs Agent Lynn Wood that he had received the chess sets from a man named Felix who asked him to deliver them to someone called Charley. He also admitted having brought three similar chess sets into the U.S. on a previous trip, which he also delivered to Charley, who had been waiting for him outside the Cus-

toms Inspection area. Agent Wood allowed Barbosa to leave the inspection area under surveillance, but no one made contact with Barbosa. In a subsequent interview with Drug Enforcement Administration Agent Bullock, Barbosa gave a somewhat different account of how he came to be delivering chessboards to Charley on this occasion and on his previous trip. Throughout the investigation, Barbosa denied any knowledge of the contents of the chessboards.

## A. *Sufficiency of the Evidence*

Barbosa first argues that there was insufficient evidence to support the jury's verdict that he knowingly and intentionally imported and possessed cocaine. This court reviews such a challenge to determine whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that the evidence was adequate to prove guilt beyond a reasonable doubt. *United States v. Collins,* 764 F.2d 647, 650–51 (9th Cir. 1985) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ Circumstantial evidence may prove knowledge or intent in cases involving possession or importation of large quantities of narcotics. *See e.g., United States v. Walitwarangkul,* 808 F.2d 1352, 1354 (9th Cir.), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1909, 95 L.Ed.2d 515 (1987); *United States v. Guzman,* 446 F.2d 1137, 1139 (9th Cir. 1971), *cert. denied,* 404 U.S. 1022, 92 S.Ct. 697, 30 L.Ed.2d 672 (1972); *United States v. Sutton,* 446 F.2d 916, 920 (9th Cir.1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 699, 30 L.Ed.2d 675 (1972). Indeed, mere possession of a substantial quantity of narcotics is sufficient to support an inference that a defendant knowingly possessed the narcotics. *See Collins,* 764 F.2d at 652 (defendant's possession of shipment containing eight and one-half pounds of cocaine sufficient to support jury finding of actual knowledge); *cf. Walitwarangkul,* 808 F.2d at 1354 (defendant's actual possession of

suitcase holding over one kilogram of heroin adequate to support conviction when coupled with other circumstantial evidence).

■ Barbosa emphasizes that he repeatedly denied knowledge of the contents of the chessboards, was unfailingly cooperative in offering his luggage for inspection and answering inspectors' questions, and made no attempt to flee from custody at the airport. He also points to the absence of any finding of his fingerprints on the chessboards and argues that, taken together, these facts dictate a finding by this court that the evidence of his knowledge was insufficient to support the verdict. His argument is unpersuasive.

Barbosa's possession of six and one-half pounds of cocaine secreted in the chessboards is undisputed. As noted, this court has found that a defendant's mere possession of a substantial quantity of drugs may be sufficient to support an inference of knowing possession. But in this case the showing of Barbosa's possession of the cocaine was supplemented with other evidence also tending to prove his awareness of the contents of his luggage. Apart from the amount of drugs he was carrying, the jury also could have inferred guilty knowledge from Barbosa's apparent nervousness and anxiety during the airport inspection; from evidence presented by the government that Barbosa had made frequent trips to the U.S., at least one of which was for the purpose of making another "chessboard" delivery; and from the discrepancies in the stories Barbosa told to Special Agents Wood and Bullock. *See Walitwarangkul,* 808 F.2d at 1354 (jury can infer guilty knowledge from defendant's changed story); *United States v. Tebha,* 770 F.2d 1454, 1457 (9th Cir.1985) (same).

The jury also could have discredited Barbosa's own testimony at trial, especially given his shifting accounts of how he made contact with Felix [1] and why he had packed the chessboards so that they were buried at the bottom of his suitcase. Barbosa also

---

1. Barbosa at first denied having been able to reach Felix by telephone, but then later in his testimony inadvertently referred to a phone call he made to Felix. Upon being questioned about the inconsistency, Barbosa then said he had a "temporary" phone number for Felix.

claimed at one point that part of his reason for coming to the United States this time was to get a book published and that there were people waiting to speak to him about the project. He then later admitted having no appointment to meet anyone here.

In sum, there was ample evidence apart from the fact of his possession of a substantial amount of cocaine to support a jury finding that Barbosa knowingly possessed and imported a controlled substance.

### B. *Sentencing Challenge*

Barbosa also takes issue with the district court's upward adjustment of his offense level under Sentencing Guideline § 3C1.1 as a result of its determination that Barbosa gave materially false testimony at trial. He attacks the application of § 3C1.1 in this case on three grounds: 1) infringement of his constitutional right to trial; 2) chilling effect on his right to testify on his own behalf at trial; and 3) noncompliance with the alleged requirement that the government formally present evidence of material falsehoods in his testimony and the district court make specific findings as to what the alleged falsehoods were which justified application of § 3C1.1.

§ 3C1.1 directs the sentencing judge to increase a defendant's offense level by two levels "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." As an example of "conduct which may provide a basis for applying this adjustment," the Application Notes include "testifying untruthfully or suborning untruthful testimony concerning a material fact." Application Note 1(c). The district judge applied the upward adjustment in this case based on his finding that "what [the defendant] said on the witness stand was pure fantasy, fantasy."

The district court's determination that Barbosa obstructed justice is a factual finding which we review for clear error. *United States v. Christman*, 894 F.2d 339, 342 (9th Cir.1990) (citing 18 U.S.C. § 3742(e));

accord, *United States v. Shoulberg*, 895 F.2d 882, 884 (2d Cir.1990); *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir.1989). Barbosa's constitutional challenges raise questions of law and are subject to review *de novo*. *United States v. Wills*, 881 F.2d 823, 825 (9th Cir.1989).

■ Barbosa first claims a "due process" sort of violation in the district court's consideration of his false testimony to increase his offense level. He notes that giving false testimony under oath would constitute violation of several federal laws and argue that allowing enhancement under the Guidelines for such acts essentially permits punishment for what amount to criminal violations without requiring the government to prove the elements beyond a reasonable doubt. We consider this argument to be foreclosed by the Supreme Court's decision in *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1977). Holding that a sentencing judge, in fixing the sentence of a defendant within statutory limits [2], may consider the defendant's false testimony observed by the judge during trial, the Court dismissed Grayson's claim that such a practice constituted punishment for the crime of perjury, for which he had not been indicted, tried, or convicted by due process. *Id.* at 52, 98 S.Ct. at 2616. Rather, the Court stated, "it is proper—indeed, even necessary for the rational exercise of discretion—to consider the defendant's whole person and personality, as manifested by his conduct at trial and his testimony under oath, for whatever light those may shed on the sentencing decision." *Id.* at 53, 98 S.Ct. at 2617. The enactment of the Guidelines has not altered this analysis. *See United States v. Belgard*, 894 F.2d 1092, 1099 (9th Cir.1990).

■ Barbosa's claim of a constitutional violation stemming from the "chilling effect" on his right to testify at trial similarly was answered by the Court in *Grayson*. Pointing out that "[t]here is no protected right to commit perjury," the Court declared Grayson's argument that judicial consideration of his conduct at trial imper-

---

**2.** Barbosa's sentence is within the guidelines    range for his offenses.

missibly "chills" a defendant's right to testify on his own behalf "entirely frivolous." *Id.* 438 U.S. at 54–55, 98 S.Ct. at 2617–18. This court too has consistently recognized the propriety of a sentencing court's enhancing a sentence because of false testimony by a defendant. *See United States v. Martinez–Navarro,* 604 F.2d 1184, 1186 (9th Cir.1979) (per curiam), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 769 (1980); *United States v. Lustig,* 555 F.2d 737, 751 (9th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977).

The Sixth Circuit recently considered and rejected a similar claim under § 3C1.1, holding that "in applying the guidelines, there is no constitutional protection against increased sentencing where it is believed that the defendant attempted to obstruct justice by lying during his testimony." *United States v. Acosta–Cazares,* 878 F.2d 945, 953 (6th Cir.1989). We agree.

■ Finally, Barbosa cites no authority but invokes this court's sense of "fairness" and "appropriateness" in advancing his argument that the determination of his sentence was infirm because the government failed to present any direct evidence of material falsehoods in his testimony and because the district court made no elaborate enumerations of which of Barbosa's false statements induced its decision to apply the two-level upward adjustment. As the government points out, neither this court nor the Supreme Court has ever imposed a requirement that a district court make specific findings as to those portions of a defendant's testimony it believes to have been falsified. *See e.g., United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th Cir.1989) (approving language in Fifth Circuit case encouraging judges to supply more specific findings in sentencing cases, but nevertheless holding that district court's statement that the defendant was not a 'minor participant' for guidelines purposes will suffice as a factual finding).

According to the provisions of 18 U.S.C. § 3742(e), a court reviewing the imposition of a sentence under the Guidelines should give "due regard to the opportunity of the district court to judge the credibility of the witnesses" and "due deference to the district court's application of the Guidelines to the facts." *See id.* It is true, as Barbosa points out, that the Application Notes to 3C1.1 require that "[i]n applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant." Application Note 2, § 3C1.1. However, we agree with the Fifth Circuit that:

> this note does not require the … court to believe the defendant, but 'simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction.'

*United States v. Garcia,* 902 F.2d 324 (5th Cir.1990) (quoting *Franco–Torres,* 869 F.2d at 801).

■ Given the alterations of Barbosa's story at trial and the government's presentation of circumstantial evidence contradicting his claimed lack of knowledge about the cocaine, we find no clear error in the district court's finding that Barbosa's testimony constituted "pure fantasy." *See United States v. Wagner,* 884 F.2d 1090, 1098 (8th Cir.1989) (based on testimony by the defendant which was contradicted by testimony of law enforcement officers and which, consistent with the jury's verdict, the district court deemed untruthful, court concluded that adjustment for obstruction of justice was lawfully applied); *Franco–Torres,* 869 F.2d at 801 (upholding upward adjustment under § 3C1.1 where there was sufficient evidence in the record to permit sentencing judge to conclude that defendant had obstructed the administration of justice).

AFFIRMED.