**UNITED STATES of America, Appellee,**

v.

**Adegboyega AKITOYE,
Defendant, Appellant.**

**No. 90–1292.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1990.

Decided Jan. 10, 1991.

David L. Martin, Providence, R.I., for defendant, appellant.

* Of the Fifth Circuit, sitting by designation.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for U.S.

Before SELYA, Circuit Judge, and BROWN * and BOWNES, Senior Circuit Judges.

SELYA, Circuit Judge.

This appeal arises out of an indictment and conviction emanating from a patiently executed undercover operation. Defendant-appellant Adegboyega Akitoye seeks to persuade us that the district court committed a plethora of errors. We are unconvinced.

## I. BACKGROUND

During early 1989, a Drug Enforcement Administration (DEA) agent, Kathleen Bennett, posing as a heroin buyer, made contact with a suspected trafficker, Edwin Osunba. Osunba proved to be merely a front man. He drove with Bennett to a Pawtucket, Rhode Island address, took her money, entered a multi-family dwelling, and returned several minutes later with 13.1 grams of 84% pure heroin. The next month, the routine was repeated. Bennett made a roughly equivalent purchase. Surveillance established that Akitoye was inside the apartment building on both occasions.

Some months later, the trap snapped shut. Bennett contacted Osunba and arranged to buy a somewhat larger quantity of heroin. On 22 June 1989, Bennett and Osunba drove to the same address. Playing the cautious consumer, Bennett proposed an arrangement whereby she would give Osunba some of the money, take delivery of some of the heroin, then give him more money, then take delivery of more heroin. The proposal was accepted. Bennett gave Osunba marked money ($6500), waited in the car while he entered the building, and received 28.1 grams of 87% pure heroin upon his return. At that point, Osunba was arrested and agents armed with a search warrant entered a first floor apartment at the designated address. The

officers found Akitoye and one Joseph Aina inside the apartment.[1] They also found the remainder of the contracted heroin, the bulk of the $6500 that Bennett had tendered for the initial installment (minus $1000 which Osunba had retained), and a precision scale.

Akitoye and Osunba were charged with conspiracy and drug trafficking in a multi-count indictment implicating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. Osunba pled guilty. Akitoye went to trial. The jury found him guilty of the two counts lodged against him. The court fixed the guideline sentencing range at 97–121 months and sentenced Akitoye to 114 months in prison. The defendant now challenges his conviction and sentence. Because he does not contest the sufficiency of the government's proof, we eschew any exegetic statement of the facts and proceed to consider his several arguments.

## II. CROSS–EXAMINATION

The government called Aina as a witness during its case in chief. His testimony was damaging to the defendant. In the defense case, Akitoye testified, contradicting Aina in certain critical respects. On cross-examination, the following exchange occurred:

Q [by prosecutor to Akitoye] Mr. Aina is a friend of yours, is that correct?

A [by Akitoye to prosecutor] Sure. Sure.

\* \* \* \* \* \*

Q Have you ever had any arguments with Mr. Aina?

A No, sir.

Q Was Mr. Aina lying to this Jury when he said that you and Mr. Osunba went into the rear of that apartment and remained together for five minutes?

MR. MARTIN [defense counsel]: Objection.

THE COURT: Sustained.

Q Do you know of any reason why Mr. Aina would lie about you?

MR. MARTIN: Objection.

THE COURT: Overruled. You may answer.

A What?

Q Do you know of any reason why Mr. Aina would lie about you?

A What?

Q I believe my question is, do you know of any reason why Mr. Aina would lie about you?

MR. MARTIN: Your Honor, I object. I object.

THE COURT: What's the objection.

MR. MARTIN: I think the witness was intending to answer the question, Your Honor. If [the prosecutor] apparently is not satisfied with the answer, then I either request he withdraw the question or allow the witness to complete the answer, please.

THE COURT: All right. Mr. Akitoye, the question is do you know of any reason why Mr. Aina would lie about you, do you understand the question?

THE WITNESS: Yes, I understand the question.

THE COURT: Can you answer that question, please.

A No.

On appeal, appellant's flagship argument is powered by this vignette. He contends that the last question was improper; that its impropriety was heightened by the suggestive nature of the preceding question (to which objection was sustained); and that compelling him to answer it constituted reversible error. We doubt, however, that the flagship ever left port. Even if it did, it lacks the propulsive force to complete the voyage that appellant has charted.

### A. *Procedural Default.*

We begin with bedrock: error may not be assigned to a ruling admitting testimony into evidence "unless a substantial right of the [aggrieved] party is affected, and ... a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context." Fed.

---

**1.** Aina, a friend of the defendant, was visiting him at the Pawtucket apartment. Aina was on the premises when Osunba entered and when he left.

R.Evid. 103(a)(1); *see also United States v. Nivica*, 887 F.2d 1110, 1125 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). Here, the grounds for the objection were not apparent. The objection could have been to form or to substance; and if the latter, on any number of bases, say, relevancy, or the lack of a proper foundation, or that the question called for a conclusion. Moreover, the argument advanced most strenuously on appeal—that the earlier "was-the-witness-lying" question indelibly stained the later "was-there-reason-to-shade" question—is somewhat sophisticated. Where, as in this situation, a party's basis for objecting is not self-evident, it becomes the attorney's obligation to make the grounds for objecting known, not the court's obligation to inquire.[2]

In the final analysis, enforcing Evidence Rule 103(a)(1) is a natural corollary to our well-settled practice of refusing to consider on appeal issues not adequately raised below. *See, e.g., United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir.1987); *United States v. Argentine*, 814 F.2d 783, 791 (1st Cir.1987). Accordingly, we have held litigants to fairly strict compliance with the imperatives of the Rule. *See, e.g., United States v. Benavente Gomez*, 921 F.2d 378, 385 n. 3 (1st Cir.1990); *Brookover v. Mary Hitchcock Memorial Hosp.*, 893 F.2d 411, 414–15 (1st Cir.1990); *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1095 (1st Cir.1989); *United States v. Piva*, 870 F.2d 753, 759–60 (1st Cir.1989). Appellant has given us no sufficient reason to excuse noncompliance in this instance.

### B. *Propriety of the Question.*

■ In any event, preserved objection or not, we think that allowing the question was well within the lower court's discretion.

To be sure, it is not the place of one witness to draw conclusions about, or cast aspersions upon, another witness' veracity.

*See United States v. Victoria*, 837 F.2d 50, 55 (2d Cir.1988); *United States v. Richter*, 826 F.2d 206, 208 (2d Cir.1987); *Gross v. Greer*, 773 F.2d 116, 118 (7th Cir.1985). The "was-the-witness-lying" question framed by the prosecutor in this case was of that stripe. It should never have been posed and defendant's objection to it was justifiably sustained. The follow-on question, however, did not solicit an opinion on credibility; rather, it inquired into the existence of any known basis for bias on the part of a key witness. It seems to us that the latter type of question is considerably more palatable than the former. *Cf. D'Aquino v. United States*, 192 F.2d 338, 369 (9th Cir.1951) (in context of particular case, asking "was-the-witness-lying" questions on cross-examination held appropriate because doing so constituted "not an attempt to procure the opinion of one witness as to the veracity of another witness," but merely a means of "point[ing] up the contradiction in the [defendant's] own testimony"), *cert. denied*, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952).

Analytically, we forge the distinction along the following lines. Bias on the part of a witness is an allowable and established ground for inquiry on cross-examination under the Federal Rules of Evidence. *See United States v. Abel*, 469 U.S. 45, 49–52, 105 S.Ct. 465, 467–469, 83 L.Ed.2d 450 (1984); *United States v. Boylan*, 898 F.2d 230, 254 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990); *see also United States v. Aleman*, 609 F.2d 298, 307 (7th Cir.1979) ("That the possible bias of a witness which may affect credibility is a proper and critical area of exploration by cross-examination is beyond question."), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). The reasons undergirding the concept of impeachment for bias

rest[ ] on two assumptions: (1) that certain relationships and circumstances impair the impartiality of a witness and (2) that a witness who is not impartial

---

**2.** Here, of course, the judge, on the occasion of the second objection, did ask for the grounds, *see supra* p. 223. Afforded the plain chance, appellant's counsel failed to make either the particularized argument belatedly urged upon us or anything remotely resembling that argument.

may—sometimes consciously but perhaps unwittingly—shade his testimony in favor of or against one of the parties.

3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 607[03] at 607–27 (1990). Because objectivity is always material to the assessment of credibility, we, and other federal courts, have been hospitable to the point of liberality in admitting evidence relevant to a witness' bias. *See, e.g., United States v. Rios Ruiz,* 579 F.2d 670, 673 (1st Cir.1978); *United States v. Houghton,* 554 F.2d 1219, 1225–26 (1st Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977); *United States v. Robinson,* 530 F.2d 1076, 1079 (D.C.Cir.1976).

Once it is accepted that a cross-examiner may bring out facts and circumstances tending to show bias, thereby weakening the credibility of a hurtful witness, we believe it follows that the cross-examiner can be allowed some latitude, in an appropriate case, to bring out the absence of bias-producing facts and circumstances, thereby strengthening the credibility of a helpful witness. Unlike a "was-the-witness-lying" question, such an inquiry does not call for an opinion, but for articulable facts. Bearing in mind the broad discretion accorded to federal trial judges in delimiting the scope of cross-examination, *see, e.g., Boylan,* 898 F.2d at 254; *United States v. Garcia–Rosa,* 876 F.2d 209, 237 (1st Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990); *United States v. LeAmous,* 754 F.2d 795, 797 (8th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985); *see also* Fed.R.Evid. 611(b), we think a "was-there-reason-to-shade" question could appropriately have been allowed.[3]

3. In view of our appraisal of the cross-examination, we need not address the government's alternative contention that any error was harmless because of the high probability that the single question and answer did *not affect the* trial's outcome.

4. Prior to adjournment, the judge sent a further communique to the jury:

The stenographer will locate the testimony of all 3 witnesses in her notes and read it to you on Monday morning.

## III. JURY DELIBERATIONS

■ Trial began on Wednesday morning, December 6, 1989 (the jury having been empaneled at an earlier time). The taking of evidence occupied less than a day and one-half. The court charged on Friday morning and the jury retired to deliberate at 10:55 a.m. Shortly after noon, the judge received successive notes indicating that the jury wanted transcripts of the testimony of Akitoye, Aina, and a third witness (a detective named Hickey).

The judge wrote a message advising the jury that there were no transcripts but that the court reporter could read back testimony. The judge's billet-doux asked if the jurors wanted to have testimony read aloud, and if so, to particularize the desired portions. The jury's reply listed the names of the same three witnesses followed by the words "Reading of Transcript". The judge then fired off a note inquiring whether the jury desired the complete testimony of these witnesses or only excerpts. The jury responded: "We would like to hear the entire testimony of all three witnesses." Soon thereafter, the judge adjourned the proceedings until Monday morning, December 11.[4]

On Monday morning, the judge addressed the jurors in open court, informing them that he would not have the testimony read back. He gave a lengthy explanation, expressing a number of fears: that the jurors would become "very bored"; that they would "get an incomplete or distorted picture of the evidence because [they would be] getting a certain portion of the evidence reemphasized ... to the exclusion of other evidence"; and that "reading back evidence especially in response to a broad

In the meantime, if you are able to progress in your deliberations without it, you should do so.

The jury foreman wrote in reply: "Deliberations have bogged down. We will have to hear the testimony Monday morning." The jury was then brought back into the courtroom and told *ore tenus:*

The Court has received your note and the stenographer will search through her notes and we'll see where we stand on Monday morning to decide what we do on Monday morning about your request.

request like [the jurors had] made ... often raises more questions than it answers." Concluding that the case did not "involve a lot of complicated issues" and that the requested repetition would be unhelpful, the judge asked the jurors to resume their deliberations. He also told them that he would reconsider the matter if, after a further effort to discuss the case, the jurors "fe[lt] strongly that [they did] need to have some of the testimony read back." Less than an hour later, without initiating any further communications, the jury returned its verdict. On appeal, the defendant asserts that the court erred in refusing to honor the jury's read-back request.

We need not tarry over this plaint. For one thing, the defense did not urge the granting of the jury's request in *haec verba* and did not object to the court's declination to reread the testimony.[5] We could, therefore, likely dispose of this argument on procedural grounds. *See, e.g., Reilly v. United States*, 863 F.2d 149, 160 (1st Cir. 1988) ("In our view, when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when their litigatory milk curdles."); *Nimrod v. Sylvester*, 369 F.2d 870, 873 (1st Cir.1966) (plaintiff who sat by when court neglected to answer jury request for supplementary instruction could not complain on appeal). We do not probe this aspect, however, because the judge's declination was obviously a proper exercise of his powers.

Appellate courts should not attempt to act as Monday-morning quarterbacks, casually second-guessing decisions made in the pressure cooker of the trial courtroom. For that reason, we have long and repeatedly held that rereading testimony during jury deliberations rests in the presider's sound discretion. *See, e.g., Argentine*, 814 F.2d at 787; *United States v. George*, 752

F.2d 749, 757 (1st Cir.1985); *United States v. Hyson*, 721 F.2d 856, 865 (1st Cir.1983); *United States v. Pimental*, 645 F.2d 85, 87 (1st Cir.1981); *United States v. Almonte*, 594 F.2d 261, 265 (1st Cir.1979). The factors the judge should consider in responding to a jury's expressed desire to rehear testimony include whether the request is "reasonably well-focused," whether there is any "physical or logistical impairment to reading" the testimony back, and the amount of time the procedure would probably consume. *Argentine*, 814 F.2d at 787. In a nutshell, the judge must weigh the reasonableness of the request, the ease or difficulty in compliance, and what is likely to be gained or lost.

In this case, the district court's on-the-spot judgment appears well-insulated from the cold winds of appellate reproof. The court was punctilious in consulting with counsel at each step of the pavane. The trial was brief and the testimony fresh in the jurors' minds, a circumstance which ordinarily lessens the need for rereading. *See Hyson*, 721 F.2d at 865. The request was broad and general—not "well-focused," in the *Argentine* phrase. The risks of confusion and boredom were real: the request encompassed roughly fifty percent of the total testimony in the case and the court reporter estimated that reading it would take close to three hours. We have accorded such factors great weight in the read-back calculus:

> [T]ime is a highly relevant factor ... not only from the standpoint of appropriate conservation of judicial resources (where that can be accomplished without endangerment of the parties' rights), but also because jurors, forced to listen endlessly to a court reporter drone on and on, are less apt to comprehend and evaluate what is being read to them. There is considerable truth, and obvious pertinence in the present context, to the adage that the mind can absorb only what the seat can endure.

*Tobacco Co.*, 926 F.2d 1217, 1235 (1st Cir.1990) (court's comment during jury instructions that issues were complex and difficult did not exceed the ambit of proper judicial conduct).

---

5. To be sure, defense counsel did "object to the Court's statement that the issues in the case are not complicated." But that statement, in context, was not error. *Cf. Kotler v. American*

*Argentine,* 814 F.2d at 787 n. 4. Perhaps most important, the judge's refusal was not unconditional, but left the door open to renewal of the request if the jury, on reflection, deemed the read-back necessary. The jury, evidently, saw no such necessity.

We prefer not to bring more coal to Newcastle. On this record, it cannot be said that the benefit to be gained so clearly outweighed the disadvantages that a full read-back was mandatory. The trial judge did not exceed the bounds of his discretion in reacting to the jury's inquiry.

## IV. SENTENCING

Appellant advances two other assignments of error, both of which relate to the lower court's calculation of the guideline sentencing range (GSR). *See generally United States v. Diaz–Villafane,* 874 F.2d 43, 47–48 (1st Cir.) (explaining method of computation under federal sentencing guidelines), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). It is enough for introductory purposes to note that the court raised Akitoye's offense level in two contested respects, upping it for both role in the offense and obstruction of justice. These increments contributed to a higher GSR and, ineluctably, to a more severe sentence. Hence, we have jurisdiction to consider appellant's asseveration that the increases were insupportable. *See* 18 U.S.C. § 3742(a)(2).

### A. *Role in the Offense.*

■ Appellant complains that the district court improvidently found him to be an "organizer" or "leader" of a "criminal activity" involving more than one but fewer than five participants, thereby leading to a two level increase. *See* U.S.S.G. § 3B1.1(c). Role-in-the-offense determinations are, by their nature, fact-specific. *United States v. McDowell,* 918 F.2d 1004, 1011 (1st Cir.1990); *United States v. Ocasio,* 914 F.2d 330, 333 (1st Cir.1990). Thus, in the ordinary case, we review such findings only for clear error. *See Ocasio,* 914 F.2d at 333; *Diaz–Villafane,* 874 F.2d at 48.

This case is well within the usual realm. Moreover, there is no serious question as to the solidity of the finding. To apply section 3B1.1(c), the court had to determine, first, that there were at least two participants in the criminal enterprise. *See United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990); *Diaz–Villafane,* 874 F.2d at 48. Given Osunba's involvement in the offenses of conviction, this prerequisite was easily satisfied.

The second requirement for the application of section 3B1.1(c) is that the defendant exercised control over, or was otherwise responsible for organizing the activities of, at least one other individual in committing the crime. *See, e.g., Fuller,* 897 F.2d at 1221. This criterion was also fulfilled. The district judge found specifically that Akitoye was Osunba's supplier and outranked him in the heroin hierarchy. The judge also noted, tellingly, that Akitoye retained dominion over the drugs and Osunba, like many other salesmen, had to check with the proprietor before making any commitments to would-be purchasers. These conclusions derive ample support from the nisi prius roll.

Indeed, appellant's assault on the "leader" findings smacks of desperation. He pounces upon the fact that the judge referred to Osunba as a "runner" without further defining the term and attempts to convince us that runners are invariably independent contractors, not underlings. We think it idle, however, to toy with labels; on the facts of this case, Osunba was no mere freelance finder, but was plainly in thrall to the defendant. By the same token, the fact that the presentence report erroneously hinged the role-in-the-offense adjustment on Akitoye's control over the heroin rather than on his control over Osunba was beside the point. What matters is that the court did not make the same mistake.

Appellant's other forays are equally meritless. The district court's finding that Akitoye "orchestrated th[e] sales" and that Osunba participated in them as Akitoye's subordinate is impervious to clear-error attack.

## B. *Obstruction of Justice.*

 The district court added two more levels to Akitoye's total by invoking U.S.S.G. § 3C1.1.[6] The basis for this adjustment was the judge's stated belief that the defendant perjured himself during trial by testifying to a self-serving "cock and bull story." Appellant's assigned error calls upon us to confront, for the first time, the question of when a defendant's election to testify may serve as a boomerang, elevating his offense level if the judge believes the testimony to have been knowingly false.

Appellant asserts that applying section 3C1.1 to trial testimony will have a "chilling effect" on a defendant's exercise of his sixth amendment rights. We disagree. Long before the guidelines hove into view, the Court determined that a judge, in fixing a defendant's sentence, could take into account false swearing by the defendant at trial. *See United States v. Grayson*, 438 U.S. 41, 52–53, 98 S.Ct. 2610, 2616–2617, 57 L.Ed.2d 582 (1977). In so ruling, the Court, *id.* at 54–55, 98 S.Ct. at 2617–2618, rejected an infrigidation argument virtually identical to that posited by Akitoye. Our own pre-guidelines cases are to like effect. *See, e.g., United States v. Kimball*, 741 F.2d 471, 475 (1st Cir.1984). The enactment of the Sentencing Reform Act and the subsequent emergence of the guidelines in no way eroded the principles which led to the holdings in *Grayson* and *Kimball.* It is, therefore, unsurprising that every circuit to have considered the "chilling effect" argument in the guidelines context has found it wanting. *See, e.g., United States v. Barbosa*, 906 F.2d 1366, 1369–70 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990); *United States v. Wallace*, 904 F.2d 603, 604–05 (11th Cir. 1990) (per curiam); *United States v. Beaulieu (John)*, 900 F.2d 1537, 1539–40 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990); *United States v. Wagner*, 884 F.2d 1090, 1098 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct.

1829, 108 L.Ed.2d 958 (1990); *United States v. Acosta–Cazares*, 878 F.2d 945, 953 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). We, too, uphold the constitutionality of U.S.S.G. § 3C1.1 as applied to a criminal defendant's trial testimony. Thus, "committing ... perjury" or "testifying untruthfully ... concerning a material fact" can trigger an upward adjustment under the guidelines. *See* U.S.S.G. § 3C1.1, comment. (n. 3).

The appellant decries not only the lawfulness of the guideline but its application in this instance. As Akitoye stresses, the guidelines propose neither "to punish a defendant for the exercise of a constitutional right" nor to make a mere denial of guilt enough to boost the accused's offense level. *See* U.S.S.G. § 3C1.1, comment. (n. 1). As a further safeguard, the Sentencing Commission had advised the judiciary that "the defendant's testimony and statements should be evaluated in a light most favorable to [him]." *Id.* This does not mean, however, as appellant seemingly contends, that the defendant's testimony is automatically entitled to credence, or that all evidentiary conflicts must be resolved according to the defendant's preference. Were that so, the safeguard would swallow the rule in a single gulp. Rather, this note suggests to us that, if perjury is less than apparent on the record as a whole, with due respect for the trial judge's coign of vantage and allowing reasonable latitude for credibility assessments, the defendant should be given the benefit of the resultant doubt. *See, e.g., Barbosa*, 906 F.2d at 1370 (sentencing judge should resolve in defendant's favor those conflicts about which the judge, after weighing the evidence, has no firm conviction); *Wallace*, 904 F.2d at 605 (same); *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir.1989) (same). When all is said and done, an upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1 requires more than a mere conflict

---

**6.** The provision reads:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 U.S.S.G. § 3C1.1.

in the trial testimony or a jury's rejection of a defendant's alibi or denial of guilt.

Because findings of this genre are fact-oriented, we will review them under the clearly erroneous standard, *accord Barbosa*, 906 F.2d at 1369; *Wallace*, 904 F.2d at 605; *Beaulieu (John)*, 900 F.2d at 1540; *see also* 18 U.S.C. § 3742(e), mindful that such findings do not require directly contradictory testimony but may spring from a solid foundation of circumstantial evidence.

It is against this chiaroscuro backdrop, then, that we turn to the problem at hand. Although it would have been better practice had the district court specifically identified the segments of Akitoye's testimony it found to be false, this omission does not preclude affirmance of its finding in an instance where, as here, the record speaks eloquently for itself. *See Wallace*, 904 F.2d at 605; *United States v. Beaulieu (Ronald)*, 900 F.2d 1531, 1536 (10th Cir. 1990). Akitoye's trial testimony—wherein he attempted, *inter alia*, to disclaim any knowledge of the heroin or the marked money found in his apartment and to characterize his henchman, Osunba, as the villain of the piece—can most charitably be described as fanciful. Viewed as a seamless web, the record stalwartly supports the conclusion that Akitoye fabricated a fairy tale in a lame effort to avoid the condign consequences of his criminal conduct. The court below, having seen through the charade, was clearly entitled to impose the two level enhancement allowed by U.S.S.G. § 3C1.1. As we have recently observed: "The law is not so struthious as to compel a judge, in making factbound determinations under the sentencing guidelines, to divorce himself or herself from common sense or to ignore what is perfectly obvious." *United States v. Sklar*, 920 F.2d 107, 112 (1st Cir.1990).

## V. CONCLUSION

We need go no further. From aught that appears, this defendant was fairly tried and, following his conviction, lawfully sentenced. No significant legal error ap-pearing, his conviction and sentence must be

*Affirmed.*