958 F.2d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis Andrew LARSON, Defendant-Appellant.
 No. 90-10323.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 9, 1992.*
Decided March 19, 1992.
 
 Before NOONAN, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Dennis Andrew Larson appeals his sentence imposed after he plead guilty to forging the signature of a bankruptcy court clerk for the purpose of authenticating a fictitious court document, a violation of 18 U.S.C. § 505 (1988). Larson argues the government failed to satisfy its burden of proving the value of the misappropriated art. We have jurisdiction to hear Larson's timely appeal pursuant to 28 U.S.C. § 1291 (1988), and we affirm.
 
 
 3
 * Kathryn Barber, Larson's fiance and a codefendant, brought an adversarial proceeding against Bruno Sabatier during the course of her bankruptcy filed in the United States Bankruptcy Court, District of Nevada. On June 6, 1988, Barber was awarded judgment against Sabatier in the amount of $13,800 (including interest and costs). In October of 1988, Barber lawfully obtained a Writ of Execution to confiscate and sell property owned by Sabatier in Nevada. The property was purchased by Barber and Larson for $10.
 
 
 4
 Sabatier was a French attorney and art collector. In April of 1986, he opened an art gallery in Las Vegas. When Sabatier returned to France in April or May of 1987, he stored much of his art with the American Vault and Storage Corporation ("American") located in Studio City, California.
 
 
 5
 Larson and Barber appeared at American's vaults sometime between December 1988 and January 1989, with a Judgment Order issued by the United States Bankruptcy Court, Central District of California. Larson told the vault custodian the Order entitled him to confiscate Sabatier's property stored in the vault. Larson and Barber were refused access to Sabatier's storage units.
 
 
 6
 On February 15, 1989, Larson and Barber returned to American with a United States Deputy Marshal. The custodian was presented with an order issued by the United States District Court for the Central District of California which authorized an inventory of Sabatier's possessions. Sabatier's possessions were inventoried by Larson and Barber at that time.
 
 
 7
 On March 8, 1989, Larson and Barber returned to American with a document captioned "Writ of Execution and Order to Remove Property." The document purported to be from the United States Bankruptcy Court, District of Nevada, with the stamped signature "Robert Clive Jones" and authenticated by Bankruptcy Court Clerk Patricia Gray. Based on this document, Larson and Barber removed the artwork stored by Sabatier in American's vaults. The Writ of Execution was neither authorized nor generated by the Bankruptcy Court. Gray's signature was identified as a forgery.
 
 
 8
 The bankruptcy court held a hearing in October of 1989, concerning authenticity of the Writ of Execution. Barber admitted she and Larson had removed Sabatier's property and had transported it to Las Vegas. Although the court ordered the property returned to Sabatier, neither Barber nor Larson would disclose its location.
 
 
 9
 On November 8, 1989, Larson was indicted for forging the signature of an officer of the bankruptcy court, in violation of 18 U.S.C. § 505, and for interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314 (1988). On January 16, 1990, Larson plead guilty to the forgery count.
 
 
 10
 The presentence report noted the art was valued by Sabatier at $338,600. Larson's sentence was calculated utilizing a base level upward adjustment of seven, pursuant to U.S.S.G. § 2F1.1(b)(1)(H), because the loss to the victim was between $200,000 and $500,000.[1] Larson disputed the presentence report's valuation of the misappropriated art pieces.
 
 
 11
 At sentencing, the government sought to establish the value of the art utilizing a vault inventory prepared by Sabatier, and testimony from Sabatier, the vault owner Warner Fleishman, Sabatier's assistant Lela Rhodes, and the Deputy United States Marshal Gloria Rosenlund. Mark Tratos, an attorney, was appointed by the court to appraise the value of the art. The district court considered the competing evidence regarding the value of the art. It then accepted the presentence report's calculations and sentenced Larson to twenty-four months in custody, three years of supervised release, and fined him $4,000.[2]
 
 II
 
 12
 The government argues Larson cannot challenge his sentence because the district court could have properly imposed an identical sentence to the one received, using the alternative ground used in sentencing Barber. The government has not argued prior to appeal that Larson could have been sentenced pursuant to U.S.S.G. § 2J1.2, as was Barber. We will not consider this argument because it was raised for the first time on appeal. See Winebrenner v. United States, 924 F.2d 851, 856 n. 7 (9th Cir.1991).
 
 III
 
 13
 Larson argues the district court, in making its factual determinations, relied on proof that does not satisfy the preponderance of the evidence standard.
 
 
 14
 * Ordinarily, we review the district court's factual findings for clear error and interpretations of the guidelines de novo. United States v. Helmy, Nos. 89-10659 and 89-10662, slip op. 589, 601 (9th Cir. Jan. 21, 1992). Larson argues, however, that before we can apply a deferential standard of review, the factual findings must be supported by a "proper foundation." This argument is merely a reiteration of the requirement that the facts not be clearly erroneous. See United States v. Fine, 946 F.2d 650, 652 (9th Cir.1991) (a district court's factual determination is clearly erroneous if it is "without foundation"); United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991) (same). Despite Larson's argument to the contrary, we review the district court's factual determinations for clear error.
 
 B
 
 15
 Larson argues the district court's finding on the amount of loss suffered by Sabatier lacked foundation because: (1) the dealer's inventory was untrustworthy; (2) the authenticity of the confiscated artwork was not established; and (3) testimony regarding the valuation of the art was not credible.
 
 
 16
 To utilize a fact in sentencing, the government bears the burden of convincing the district judge, United States v. Howard, 894 F.2d 1085, 1090 (9th Cir.1990), "by a preponderance of the evidence that the fact in question exists." United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc) (quotation omitted). "[T]he preponderance of the evidence standard is a meaningful one" that requires more than a mere weighing of the quantum of evidence produced. Id.
 
 
 17
 Any fact relied on by the district court in sentencing must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). A challenge to information used during sentencing must show the information to be "(1) false or unreliable, and (2) demonstrably made the basis for the sentence." United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir.1990) (quotation omitted) (emphasis added in Carvajal ).
 
 
 18
 The Sentencing Guidelines allow "loss" under U.S.S.G. § 2F1.1 to be "inferred from any reasonably reliable information available...." U.S.S.G. § 2B1.1, Application Note 3; U.S.S.G. § 2F1.1, Application Note 7. "The amount of loss need not be precise.... The court need only make a reasonable estimate of the range of loss, given the available information." U.S.S.G. § 2F1.1, Application Note 8.
 
 1. Inventory
 
 19
 Larson argues the inventory was untrustworthy because it was prepared from memory, customs documents, and invoices three years after the art was placed in American's vault.
 
 
 20
 Larson and Barber inventoried Sabatier's stored items shortly before removing the art. At Barber's trial, Larson testified the inventory was approximately three pages long, but he couldn't recall where their inventory had been kept. When shown Sabatier's inventory, Larson remarked that "he's extremely specific in his labeling of this. My understanding of what was there isn't as specific as his labelings here." In response to Larson's allegation that the inventory was insufficient, the district court noted that he "had rarely seen a case that was documented a whole lot better than this one. You either live in a different world, or you have no respect for the truth."
 
 
 21
 The inventory was compiled utilizing accurate documentation of past transactions. Sabatier's inventory was also supported by the testimony of his assistant, the vault owner, and the deputy United States Marshal.
 
 
 22
 Although the inventory was compiled three years after placing the items in the vault, Larson failed to argue or demonstrate, beside his unsupported statements, that the contents of the vault at the time Larson and Barber raided it contained less than it had at any previous point in time. The most recent inventory of the items was conducted by Larson. However, this inventory was not presented to support Larson's assertion that Sabatier's inventory overrepresented the quantity of art stored in American's vault.
 
 
 23
 Larson has not convinced us that Sabatier's inventory is "false or unreliable." The district court did not err in relying on the inventory to determine the extent and value of the misappropriated art.
 
 2. Authenticity of Artwork
 
 24
 Larson argues Tratos discredited the probable authenticity of the artwork, therefore the pieces taken by Larson and Barber could not be proven to have value. Although Tratos had questioned the source of some of Sabatier's prints in 1986, four years prior to the present criminal proceeding, he did not allege all of Sabatier's art collection was not authentic. Tratos stated in his testimony that "the authenticity of each piece would have to be determined." However, Tratos initially appraised only a small quantity of the art taken from the vault. After recovery of most of the artwork, Tratos again appraised the pieces of art but was not called to testify regarding his valuation. If Tratos had actually determined the art collection to be valueless, Larson had the opportunity to bring that conclusion to the attention of the district court.
 
 
 25
 Additionally, Sabatier testified that particular pieces of the stolen art had been purchased through an auction. He stated that before the items are auctioned, their authenticity is verified by an expert. He also noted some of the pieces had certificates of authenticity attached to the work.
 
 
 26
 Larson has failed to convince us the district court erred in concluding that Sabatier's art, stored in American's vault, was anything but authentic.
 
 3. Credibility of Witnesses
 
 27
 In reviewing the imposition of a sentence under the Guidelines, we "shall give due regard to the opportunity of the district court to judge the credibility of the witnesses...." 18 U.S.C. § 3742(e) (1988); see also United States v. Barbosa, 906 F.2d 1366, 1370 (9th Cir.1990).
 
 
 28
 Sabatier testified at Barber's trial. Because his credibility was in issue at that time, the district judge had the opportunity to evaluate the truthfulness of his testimony. When the district judge was questioned during sentencing regarding the credibility of Sabatier, he responded that he gave Sabatier's testimony "[a] good deal more [credibility] than I gave to [Larson]."
 
 
 29
 Sabatier testified he had purchased the pieces of art for no less than $200,000, but the items probably had a current market value of approximately $1,200,000. To arrive at the market value, Sabatier referred to a treatise on art valuation. This testimony was proper because the amount of loss calculated should reflect the estimated market value of the property. United States v. Hernandez, Nos. 90-50556 and 90-50589, slip op. 17097, 17114-15 (9th Cir. Dec. 24, 1991).
 
 
 30
 Larson alleges Sabatier's testimony was not consistent in specifying which market his valuation was based on. Because loss does not need to be established with precision and because market value is a broad term encompassing many subjective and objective factors, Larson has failed to demonstrate Sabatier's testimony lacked reliability. Because Sabatier was willing to pay $200,000 for the art pieces, it is reasonable to conclude the fair market value of the art was at least $200,000. Even the higher market value is a reliable figure because it was estimated based on a source accepted in the art industry. The district court's valuation of between $200,000 and $500,000 was generous.
 
 
 31
 Larson argues Sabatier's valuation is not reliable because he varied the amount of loss on different occasions. We have reviewed the facts and testimony and do not find the valuation references vague or undermining of the district court's finding on value.
 
 IV
 
 32
 We conclude the district court utilized reliable facts in determining the amount of loss to the victim. For sentencing purposes, the exact value of each item did not need to be unequivocally established. The district court was only required to establish the value of the loss at more than $200,000 to enhance Larson's base offense level by seven. The government presented a proper and sufficient foundation to establish by a preponderance of the evidence that the value of the misappropriated artwork exceeded $200,000.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The base level of six, U.S.S.G. § 2F1.1(a), was also increased by two points pursuant to U.S.S.G. § 2F1.1(b)(2)(A) for more than minimal planning
 
 
 [2]
 Barber was also sentenced to twenty-four months in custody. However, her sentence included an upward enhancement pursuant to U.S.S.G. § 2J1.2 (Obstruction of Justice), instead of an enhancement pursuant to § 2F1.1(b)(1)